whatever belongs to such a bailee. At the third floor the chauffeur without further word waited for floor space in the paint room, and when it was provided he was asked "to run it in the paint shop," and thereupon started his car forward, and the accident followed. He had been waiting to convey his car to the paint room, and while so waiting there is nothing to indicate that he was waiting as the servant of the Ormond Company. Therefore, when the paint room was cleared sufficiently to permit entrance, and the chauffeur was asked to do that which he was waiting to do, viz., convey the car to the paint shop, the court could not say that the only inference to be drawn was that he had ceased to be defendant's agent and servant and had become that of the Ormond Company.

It is not profitable to review the decisions. The present facts must speak for themselves. Do they permit only the inference that the business at the time was that of the Ormond Company, and that it had taken over the defendant's chauffeur to further it? I think that it is not so. When a person takes his car to a place for repairs, the proposed bailee may indicate where he wishes it delivered, and if the owner comply, in the absence of overruling circumstances, he presumably remains in the custody and control of the car and responsible for its usual operation. I conceive of no different legal conclusion if the owner commit the car to his chauffeur. The car in the present instance was carried to a paint shop on the third floor. Had the paint shop been on the first floor, and the chauffeur been asked to take the car to it, the case would be equivalent. There is no presumption of law that, when a car stops upon its first entrance, a delivery is effected. It is quite as much as is due the defendant to submit to the jury the question whether, at the time the chauffeur started the car forward on the third floor, he had for the purposes of the acts ceased to be defendant's agent and servant, and had become the servant of the Ormond Company.

The judgment and order should be reversed, and a new trial granted, costs to abide the event. All concur.

───────

(163 App. Div. 72)

FIRST NAT. BANK OF BINGHAMTON v. BAKER et al. (No. 162–115.)

(Supreme Court, Appellate Division, Third Department. July 1, 1914.)

1. BILLS AND NOTES (§ 223\*)—LIABILITY OF INDORSER.

The obligation of an indorser is that he will pay the note if it is duly presented for payment and notice of nonpayment duly given him.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 524; Dec. Dig. § 223.\*]

2. BILLS AND NOTES (§ 397\*)—NECESSITY OF DEMAND AND NOTICE OF NONPAYMENT.

That an indorser of a note was given a mortgage to secure him on account of such indorsement did not dispense with the necessity of presenting the note for payment and giving notice of nonpayment.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1029–1044; Dec. Dig. § 397.\*]

─────────────────────────────

3. MORTGAGES (§ 405*)—FORECLOSURE OF MORTGAGE GIVEN AS COLLATERAL SECURITY.

     A mortgage given to an indorser on a note to secure him on account thereof could not be foreclosed until the indorser was charged with liability on the note.

     [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1168; Dec. Dig. § 405.*]

Appeal from Special Term, Broome County.

Action by the First National Bank of Binghamton against Ervin D. Baker and others. From an interlocutory judgment, overruling its demurrer to the complaint, the defendant E. I. Du Pont de Nemours Powder Company appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, HOWARD, and WOODWARD, JJ.

T. B. & L. M. Merchant, of Binghamton, for appellant.

Stewart & Kelly, of Binghamton, for respondent.

JOHN M. KELLOGG, J. [1, 2] The action was brought to foreclose a mortgage executed by the defendants Baker to one Bayless. Bayless, for the accommodation of the Bakers, November 27, 1912, indorsed their note, payable to the plaintiff bank for $2,000, two months after date, and the mortgage was given by them to secure him on account of said indorsement. They owed no indebtedness to him, and none could arise from them to him unless he paid the note or was charged with liability thereon. The obligation of an indorser is that, if the note is duly presented for payment and notice of nonpayment duly given to him, he will pay the same. It does not appear that the indorser was ever charged with liability. The fact that Bayless was secured for his indorsement did not dispense with the necessity of presenting the note for payment and notice of nonpayment. Seacord v. Miller, 13 N. Y. 55.

[3] The particular terms of the bond and mortgage are not material, as it is conceded that their only force or effect was to secure the indorser on account of his having assumed that position upon the note. The note was renewed from time to time; the last renewal being due July 27, 1913. The mortgage was assigned to the bank, but at what time, whether before or after the last renewal note became due, does not appear.

It is manifest if Bayless had continued to own the mortgage, and the note became due, and he was not charged with liability thereon, that he could not have maintained an action to foreclose the mortgage.

The interlocutory judgment should be reversed, with costs to the appellant in both courts, with the usual leave to the plaintiff upon the payment of such costs, to amend its complaint. All concur.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes